UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SCOTT HILTON,                          ) Case No. CV 15-0806-JPR
                                       )
                    Plaintiff,         )
                                       )
          v.                           ) **MEMORANDUM OPINION AND ORDER**
                                       ) **AFFIRMING COMMISSIONER**
CAROLYN W. COLVIN, Acting              )
Commissioner of Social                 )
Security,                              )
                                       )
                    Defendant.         )
                                       )

**I.    PROCEEDINGS**

     Plaintiff seeks review of the Commissioner's final decision
denying his application for Social Security disability insurance
benefits ("DIB").  The parties consented to the jurisdiction of
the undersigned U.S. Magistrate Judge under 28 U.S.C. § 636(c).
The matter is before the Court on the parties' Joint Stipulation,
filed October 23, 2015, which the Court has taken under
submission without oral argument.  For the reasons stated below,
the Commissioner's decision is affirmed.

1

**II.   BACKGROUND**

Plaintiff was born in 1959.  (Administrative Record ("AR") 133.)  He obtained a GED and worked as a preparation cook, guard, guard supervisor, tool mechanic/repairer, and auto-body helper. (AR 21-22, 154.)

On November 17, 2011, Plaintiff applied for DIB, alleging that he had been unable to work since January 19, 2011, because of cirrhosis of the liver, portal hypertension, "ascites, edema," "generalized anxiety disorder," and "back pain (lumbar #5)."  (AR 133.)  After his application was denied, he requested a hearing before an Administrative Law Judge.  (AR 98.)  A hearing was held on May 9, 2013, at which Plaintiff, who was unrepresented, testified, as did a vocational expert.  (AR 30-72.)  In a written decision issued June 11, 2013, the ALJ found Plaintiff not disabled.  (AR 12-22.)  On December 4, 2014, the Appeals Council denied Plaintiff's request for review.  (AR 1.)  This action followed.

**III. STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole. See id.; Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion.  Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla but less than a preponderance.

2

1  Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec.
2  Admin., 466 F.3d 880, 882 (9th Cir. 2006)).   To determine whether
3  substantial evidence supports a finding, the reviewing court
4  "must review the administrative record as a whole, weighing both
5  the evidence that supports and the evidence that detracts from
6  the Commissioner's conclusion."   Reddick v. Chater, 157 F.3d 715,
7  720 (9th Cir. 1996).   "If the evidence can reasonably support
8  either affirming or reversing," the reviewing court "may not
9  substitute its judgment" for the Commissioner's.   Id. at 720-21.
10 **IV.   THE EVALUATION OF DISABILITY**
11     People are "disabled" for purposes of receiving Social
12 Security benefits if they are unable to engage in any substantial
13 gainful activity owing to a physical or mental impairment that is
14 expected to result in death or has lasted, or is expected to
15 last, for a continuous period of at least 12 months.   42 U.S.C.
16 § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir.
17 1992).
18     A.   The Five-Step Evaluation Process
19     The ALJ follows a five-step sequential evaluation process to
20 assess whether a claimant is disabled.   20 C.F.R.
21 § 404.1520(a)(4); Lester v. Chater, 81 F.3d 821, 828 n.5 (9th
22 Cir. 1995) (as amended Apr. 9, 1996).   In the first step, the
23 Commissioner must determine whether the claimant is currently
24 engaged in substantial gainful activity; if so, the claimant is
25 not disabled and the claim must be denied.   § 404.1520(a)(4)(i).
26     If the claimant is not engaged in substantial gainful
27 activity, the second step requires the Commissioner to determine
28 whether the claimant has a "severe" impairment or combination of

3

1  impairments significantly limiting his ability to do basic work
2  activities; if not, the claimant is not disabled and the claim
3  must be denied.  § 404.1520(a)(4)(ii).

4        If the claimant has a "severe" impairment or combination of
5  impairments, the third step requires the Commissioner to
6  determine whether the impairment or combination of impairments
7  meets or equals an impairment in the Listing of Impairments
8  ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix
9  1; if so, disability is conclusively presumed.
10 § 404.1520(a)(4)(iii).

11       If the claimant's impairment or combination of impairments
12 does not meet or equal an impairment in the Listing, the fourth
13 step requires the Commissioner to determine whether the claimant
14 has sufficient residual functional capacity ("RFC")[1] to perform
15 his past work; if so, he is not disabled and the claim must be
16 denied.  § 404.1520(a)(4)(iv).  The claimant has the burden of
17 proving he is unable to perform past relevant work.  <u>Drouin</u>, 966
18 F.2d at 1257.  If the claimant meets that burden, a prima facie
19 case of disability is established.  <u>Id.</u>

20       If that happens or if the claimant has no past relevant
21 work, the Commissioner then bears the burden of establishing that
22 the claimant is not disabled because he can perform other
23 substantial gainful work available in the national economy.
24 § 404.1520(a)(4)(v); <u>Drouin</u>, 966 F.2d at 1257.  That
25 determination comprises the fifth and final step in the

26 _____

27       [1] RFC is what a claimant can do despite existing exertional
   and nonexertional limitations.  § 404.1545; <u>see</u> <u>Cooper v.</u>
28 <u>Sullivan</u>, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

                              4

1   sequential analysis.  § 404.1520(a)(4)(v); <u>Lester</u>, 81 F.3d at 828

2   n.5; <u>Drouin</u>, 966 F.2d at 1257.

3       B.   <u>The ALJ's Application of the Five-Step Process</u>

4       At step one, the ALJ found that Plaintiff had not engaged in

5   substantial gainful activity since January 19, 2011, the alleged

6   onset date.  (AR 14.)  At step two, he concluded that Plaintiff

7   had the severe impairments of "liver cirrhosis with portal

8   hypertension and lumbar degenerative joint and disc disease."

9   (<u>Id.</u>)  He found that Plaintiff's mental impairments of "alcohol

10  abuse/dependence, in remission, anxiety, and depression" were not

11  severe.  (<u>Id.</u>)  At step three, the ALJ determined that

12  Plaintiff's impairments did not meet or equal any of the

13  impairments in the Listing.  (AR 16.)  At step four, he found

14  that Plaintiff had the RFC to perform light work with additional

15  physical restrictions but no mental ones.  (<u>Id.</u>)  Based on the

16  VE's testimony, the ALJ concluded that Plaintiff could perform

17  his past relevant work as a guard and guard supervisor.  (AR 21.)

18  Accordingly, he found Plaintiff not disabled.  (AR 22.)

19  **V.   DISCUSSION**

20  <u>The ALJ Properly Found Plaintiff's Mental Impairments Not Severe</u>

21      Plaintiff claims the ALJ erred in finding his mental

22  impairments not severe.  (J. Stip. at 4-13, 18-19.)

23      A.   <u>Applicable law</u>

24      The step-two inquiry is "a de minimis screening device to

25  dispose of groundless claims."  <u>Smolen v. Chater</u>, 80 F.3d 1273,

26  1290 (9th Cir. 1996).  The claimant has the burden to show that

27  he has one or more "severe" medically determinable impairments

28  that can be expected to result in death or last for a continuous

5

1  period of at least 12 months, as demonstrated by evidence in the
2  form of signs, symptoms, or laboratory findings.  See Bowen v.
3  Yuckert, 482 U.S. 137, 146 n.5 (1987); §§ 404.1508,
4  404.1520(a)(4)(ii); Ukolov v. Barnhart, 420 F.3d 1002, 1004-05
5  (9th Cir. 2005).  A medically determinable impairment is "severe"
6  if it "significantly limits [the claimant's] physical or mental
7  ability to do basic work activities."[2]  § 404.1520(c); see also
8  § 404.1521(a).  "An impairment or combination of impairments may
9  be found 'not severe only if the evidence establishes a slight
10 abnormality that has no more than a minimal effect on an
11 individual's ability to work.'"  Webb v. Barnhart, 433 F.3d 683,
12 686 (9th Cir. 2005) (emphasis in original) (quoting Smolen, 80
13 F.3d at 1290).  A court must determine whether substantial
14 evidence in the record supported the ALJ's finding that a
15 particular impairment was not severe.  See id. at 687.

16    B.  Analysis

17    The ALJ found that Plaintiff had medically determinable
18 mental impairments of "alcohol abuse/dependence, in remission,
19 anxiety, and depression" but that those impairments caused no
20 more than a "minimal limitation" in his "ability to perform basic
21 mental work activities" and were thus not severe.  (AR 14.)
22 Substantial evidence supported that determination, as discussed
23 below.

24    As the ALJ noted, although Plaintiff's primary-care
25

26    [2] "Basic work activities" include, among other things,
"[p]hysical functions such as walking, standing, sitting,
27 lifting, pushing, pulling, reaching, carrying, or handling" and
"[c]apacities for seeing, hearing, and speaking."  § 404.1521(b);
28 accord Yuckert, 482 U.S. at 141.

6

physicians diagnosed and prescribed low-dose medication for depression and anxiety, very few objective clinical findings supported those diagnoses, suggesting that Plaintiff's mental-health treatment was based on his subjective complaints. <u>See</u> <u>Febach v. Colvin</u>, 580 F. App'x 530, 531 (9th Cir. 2014) (finding that diagnosis of depression "alone [was] insufficient for finding a 'severe' impairment" when other evidence in record suggested that impairment was not severe). For example, in February 2011, Plaintiff's primary-care physician diagnosed depression and anxiety but noted normal psychiatric findings. (AR 217.) Later treatment notes, from April to June 2011, did not mention treatment for depression or anxiety and continued to indicate normal psychiatric findings. (AR 212-14.) In August 2011, a different primary-care physician noted that Plaintiff had been taking mirtazapine and chlordiazepoxide[3] since January 2011 and refilled the prescriptions but did not diagnose depression or anxiety. (AR 285, 288, 290; <u>see also</u> AR 292-93 (in Sept. 2011, physician noting Aug. 2011 continuation of psychiatric medication but not diagnosing depression or anxiety).) In December 2011, a

---

[3] Mirtazapine is used to treat depression. <u>See</u> <u>Mirtazapine</u>, MedlinePlus, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a697009.html (last updated Dec. 15, 2014). Chlordiazepoxide, also known by the brand name Librium, is used to treat anxiety and control agitation caused by alcohol withdrawal. <u>See</u> <u>Chlordiazepoxide</u>, MedlinePlus, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682078.html (last updated July 16, 2012). Plaintiff apparently stopped drinking in January 2011. (<u>See</u> AR 54 (Plaintiff testifying that he stopped drinking after hospitalization for esophageal bleeding), 284 (Plaintiff was hospitalized in Jan. 2011); <u>see also</u> AR 217 (health-risk assessment indicating in Feb. 2011 that Plaintiff quit drinking one month earlier).)

third primary-care physician diagnosed depression based on Plaintiff's self-reported history.  (AR 422-23.)  From June 2012 to March 2013, the physician prescribed psychiatric medications despite noting normal psychiatric findings and not conducting any mental-status examination.  (See AR 426 (in June 2012, prescribing medication without conducting mental-status examination), 428-30 (in July 2012, noting that Plaintiff was "[n]egative" for anxiety, depression, insomnia, and memory impairment), 432 (in Aug. 2012, noting that Plaintiff had normal insight, normal judgment, and appropriate mood and affect), 435 (in Oct. 2012, continuing medication without conducting mental-status examination), 437-38 (in Mar. 2013, noting that Plaintiff had normal insight, normal judgment, and appropriate mood and affect).)  Thus, even though Plaintiff was treated for depression and anxiety, the record showed that his treatment was based on his subjective complaints, which are insufficient to establish a severe impairment.  See Mitchell-St. Julien v. Astrue, No. CV 10-9080-SP, 2012 WL 83858, at *5-6 (C.D. Cal. Jan. 11, 2012) (in finding claimant's mental impairment not severe, ALJ properly rejected treating physician's opinion because it was based on claimant's subjective complaints); cf. Ukolov, 420 F.3d at 1005-06.

Further, treatment notes showed that medication improved Plaintiff's self-reported anxiety and depression.  See Davenport v. Colvin, 608 F. App'x 480, 481 (9th Cir. 2015) (affirming ALJ's determination that claimant's mental impairments were not severe in part because treatment notes indicated that claimant's "depression and anxiety were either mild or improved with

8

treatment"). For example, in July 2012, Plaintiff reported that although some days "he [could] get overwhelmed," he was "stable." (AR 427.) In August 2012, he was off Librium (chlordiazepoxide) and was on Paxil[4] and reported that he was "doing fine." (AR 431.) In October 2012, he reported "feeling better" on Paxil, with "less mood issues/anxious," but because of side effects he was switched to Lexapro.[5] (AR 434-35.) In March 2013, Plaintiff reported "[n]o further significant rage/irritability" with Lexapro, and although he had "some anxiety still," he was not "obsessed over it." (AR 436.) At the time of the hearing, the only medication Plaintiff was taking for his mental health was a "low dose" of Paxil for self-described "mild bouts of depression." (AR 48.) He testified that his medicines were "stabilizing, doing better now." (AR 58.)

Finally, in his application for benefits, Plaintiff did not allege depression as a disabling mental impairment; he alleged only generalized anxiety disorder. (AR 153.) When asked at the hearing why he couldn't work, he didn't point to any mental-health issues but rather only his portal hypertension. (See AR 42-43.) Plaintiff acknowledged that he had never received mental-health treatment from a psychiatrist or psychologist or

---

[4] Paxil is a brand name for paroxetine, which is used to treat depression and generalized anxiety disorder, among other mental disorders. See Paroxetine, MedlinePlus, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a698032.html (last updated Nov. 15, 2014).

[5] Lexapro is a brand name for escitalopram, which is used to treat depression and generalized anxiety disorder. See Escitalopram, MedlinePlus, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a603005.html (last updated Feb. 15, 2016).

been hospitalized for psychiatric problems.  (AR 48.)  He also
stated that his "mild bouts of depression" were "due to not
working and not having any kind of a lifestyle whatsoever."
(Id.)  Further, Plaintiff testified that much of his lethargy and
inability to do much around the house was attributable to the
"sedat[ing]" side effect of one of the medications he took for
his physical conditions (AR 43; see also AR 58-59) — and
presumably was not caused by his "mild" depression.  For all
these reasons, the ALJ properly found that Plaintiff's mental
impairments caused no more than minimal limitation in his ability
to perform basic work activities and were therefore not severe.

     In making his determination, the ALJ properly discounted the
opinions of the consultative examining psychiatrist and
nonexamining state-agency physician.  Dr. Pramual Pinanong, the
consultative psychiatrist, examined Plaintiff in March 2012 and
diagnosed "[m]ajor depression, recurrent, unspecified."  (AR
316.)  Dr. Pinanong opined that Plaintiff was "moderately
impaired" in his ability to "follow simple one or two step
instructions," "maintain attention and concentration required to
perform work-related tasks," and "withstand the stress of a
routine workday and adapting [sic] to change."  (AR 317.)  Dr.
Elizabeth Leftik, a state-agency psychologist, reviewed
Plaintiff's records and prepared a case analysis.  (AR 79-80.)
Among other things, she found that Plaintiff had moderate
difficulties in maintaining concentration, persistence, or pace

and concluded that he had a severe affective disorder.  (AR 79.)[6]

The ALJ properly gave "little weight" to Dr. Pinanong's opinion because it was inconsistent with Plaintiff's "longitudinal mental health treatment records," which contained little objective medical support, as discussed above.  (AR 16); see Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (ALJ may properly reject examining physician's opinion "for lack of objective support"); Mendoza v. Astrue, 371 F. App'x 829, 831-32 (9th Cir. 2010) (ALJ may reject examining physician's opinion that is "unsupported by the record as a whole").

The ALJ also properly discounted Dr. Pinanong's opinion because it was not supported by his own examination findings.  (AR 15); see Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is . . . inadequately supported by clinical findings.").  As the ALJ noted, Plaintiff told Dr. Pinanong that although he had been "feeling depressed off and on," it was "not that bad."[7]  (AR 314.)  Plaintiff also stated that he got along well with friends and reported normal activities of daily living, including helping

---

[6] The ALJ posed a hypothetical to the VE that seemingly accounted for all of these mental limitations, and the VE responded that although Plaintiff would not be able to do his past work there was other substantial gainful work available for him in the national economy.  (AR 66.)  Because the ALJ found that Plaintiff could perform some of his past relevant work, he did not reach step five of the sequential evaluation.

[7] Plaintiff is incorrect in asserting that "[n]o where [sic] in Dr. Pinagnong's [sic] opinion does he indicate 'not that bad.'"  (J. Stip. at 12.)

his friend get ready for work, preparing meals, washing dishes, checking email, cleaning the house, and watching movies with a friend.  (AR 314-15.)

The ALJ also properly accorded little weight to Dr. Pinanong's assessed moderate limitations because they "appear[ed] to be based primarily on [Plaintiff's] subjective complaints," which the ALJ found "not fully credible."  (AR 16); see Tonapetyan, 242 F.3d at 1149 (because record supported ALJ's discounting of claimant's credibility, ALJ "was free to disregard [examining physician's] opinion, which was premised on [claimant's] subjective complaints").  Given that minimal objective medical evidence in the record supported the diagnoses of depression and anxiety, the ALJ reasonably noted that Dr. Pinanong's opinion was based primarily on Plaintiff's subjective complaints.  In addition, Dr. Pinanong's assessed limitations were inconsistent with Plaintiff's statement that his depression was "not that bad" and with his description of his daily activities.  Moreover, Plaintiff does not challenge the ALJ's credibility determination on appeal; indeed, the record supports it.  For instance, Plaintiff told Dr. Pinanong that after his May 2010 surgery to repair "burst arteries," he "never went back to work again due to his physical problems along with anxiety and depression."  (AR 314.)  But at the hearing, he testified that he was laid off in 2010 because the company was downsizing.  (AR 42.)  Plaintiff also told Dr. Pinanong that he received treatment from a psychiatrist in 2010 (AR 314), but the record does not contain any treatment notes from a psychiatrist or other mental-health specialist (see AR 80 (state-agency reviewer noting no

12

psychiatric records except Dr. Pinanong's report)).

Plaintiff cites <u>Edlund v. Massanari</u>, 253 F.3d 1152, 1159 (9th Cir. 2001) (as amended) (J. Stip. at 10), but that case is distinguishable. In finding the claimant's mental impairments not severe, the ALJ in <u>Edlund</u> did not specifically address the weight given to the examining psychologist's opinion but rather "selectively" cited portions in which the psychologist expressed doubt about the claimant's credibility. 253 F.3d at 1159; <u>see also</u> <u>id.</u> at 1155. Here, the ALJ separately addressed Dr. Pinanong's findings and opinion in making his step-two determination, according little weight to Dr. Pinanong's assessed limitations not only because they were based on Plaintiff's subjective complaints but because they were inconsistent with the record as a whole and with some of his own examination findings. As discussed above, those reasons were supported by substantial evidence.

The ALJ also properly gave "little weight" to the nonexamining state-agency physician's opinion that Plaintiff's mental impairments were severe. (AR 16; <u>see</u> AR 79.) As the ALJ noted, Dr. Leftik's opinion expressly relied on Dr. Pinanong's opinion and was not supported by objective medical evidence in the record. (<u>See</u> AR 80 (Dr. Leftik noting no psychiatric evidence in record other than Dr. Pinanong's report), 81 (Dr. Leftik indicating "Great Weight" given to Dr. Pinanong's opinion)); <u>see</u> <u>Harlow v. Soc. Sec. Admin., Comm'r</u>, 577 F. App'x 698, 698 (9th Cir. 2014) (in finding claimant's mental impairments not severe, ALJ properly gave "minimal weight" to opinion of nonexamining physician because he "failed to clearly

13

explain or adequately support his finding that [claimant] suffered from moderate limitations"); cf. Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004) ("an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole . . . or by objective medical findings").

Thus, substantial evidence supported the ALJ's finding that Plaintiff's mental impairments were not severe.  Plaintiff is not entitled to remand on this ground.

**VI.   CONCLUSION**

Consistent with the foregoing, and under sentence four of 42 U.S.C. § 405(g),[8] IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner, DENYING Plaintiff's request for remand, and DISMISSING this action with prejudice. IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment on counsel for both parties.

DATED: March 17, 2016

_____
JEAN ROSENBLUTH
U.S. Magistrate Judge

---

[8] That sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

14